THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARNES VRABAC and PAUL ROCCO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>S-L DISTRIBUTION COMPANY, LLC,<br><br>Defendant. | CIVIL ACTION NO. 3:20-cv-429<br><br>CLASS ACTION |

## **COMPLAINT – CLASS ACTION**

Plaintiffs Arnes Vrabac and Paul Rocco bring this class action lawsuit against S-L Distribution Company, LLC ("Defendant") for breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment.

Plaintiffs also assert separate and distinct claims for violations of the Connecticut General Statutes ("C.G.S.") § 31-71a et seq., and to recover for damages resulting from these breaches and violations under C.G.S. § 31-72.  These claims are asserted individually and not on behalf of a class of similarly situated individuals, and they are not contingent on Plaintiffs succeeding on their claims for breach of contract.

## **JURISDICTION AND VENUE**

1. This court has jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1332(d)(2)(A) and 28 U.S.C. § 1332(a), the Class Action Fairness Act ("CAFA") and federal diversity jurisdiction statute.

2. There are at least 100 members of the proposed class.

3. This is a class action under Rule 23 of the Federal Rules of Civil Procedure.

4. The parties are diverse and the aggregate amount in controversy exceeds

1

$5,000,000, exclusive of interest and costs.

5. At least one member of the proposed class is a citizen of a state different from that of at least one defendant.

6. Plaintiffs' claims involve matters of national or interstate interest.

7. Venue is proper in this district under 28 U.S.C. § 1391(b)-(c) because the acts or omissions giving rise to claims in this Complaint took place in this judicial district.

8. This court has personal jurisdiction over Defendant pursuant to Connecticut's long-arm statute because it transacts business in the State of Connecticut, it enters into contracts with the class members, including Plaintiffs, and its conduct in violating the Connecticut wage payment law and common law is tortious as that term is defined under the long arm statute.

## PARTIES

9. Plaintiff Arnes Vrabac resides in East Haven, Connecticut 06512.

10. Plaintiff Paul Rocco resides in Andover, Connecticut 06232.

11. Defendant is headquartered at 1250 York Street, Hanover, PA.

12. Prior to around 2016, Defendant operated under the name S-L Distribution Company, Inc.

## FACTS

13. Defendant, according to its website, "is a wholesale distributor of various snack food products manufactured by subsidiaries and affiliates of Snyder's-Lance, Inc."

14. Throughout the nation, Defendant pays workers to deliver/distribute snack food products to retail stores and other customers within specific geographic areas referred to as "routes."  Defendant requires these workers to form corporations as a condition of working for Defendant and refers to the workers as "IBOs."  Such terminology will be used throughout this complaint.

15. Defendant's company website states that "[t]he individual(s) who own the IBO entity must have a valid driver's license." The website further explains that "[a]n IBO is responsible for providing its own vehicle" and that "[c]ommon delivery vehicles used for this type of business are step vans, box trucks or trailers."

16. IBOs use vehicles to transport the products from Defendant's warehouses to the customers.

17. Plaintiffs Vrabac and Rocco work for Defendant as IBOs in Connecticut and, in order to work for Defendant, were required to form corporate entities.

18. Defendant recruits IBOs across the country to perform the same or similar work under the substantially same terms and identical or nearly identical Distributor Agreements.

19. Defendant markets jobs as IBOs to individuals and does not require them to be affiliated with a corporate entity until they are asked to sign Defendant's Distributor Agreement prior to beginning their work delivering Defendant's products to Defendant's customers.

20. The Distributor Agreements are all governed by a Pennsylvania choice of law provision or are otherwise governed by the law of another state that is materially the same as Pennsylvania law.

21. Defendant requires its workers to pay a substantial sum of money for alleged "distribution rights" in a geographic territory (i.e., routes) prior to executing its Distributor Agreements.

22. To finance these sizable payments for routes, Defendant assists IBOs in securing substantial loans (with significant interest rates).

23. Defendant deducts "route payments" from IBOs' compensation each week to service these loans.

24. Although Defendant claims in its standardized Distributor Agreements that IBOs are independent contractors, the Distributor Agreements are *de facto* employment agreements.

25. Defendant uses deceptive language to obscure the employment nature of its business model and frequently changes terminology to disguise the extent of its control over IBOs' work.

26. Through Defendant's Distribution Agreement and via its managerial discipline, policies, and practices, Defendant extensively controls the manner and means by which IBOs perform their work for Defendant.

27. The work of Plaintiffs and other IBOs falls squarely within Defendant's usual course of business. Indeed, Plaintiffs and other IBOs are undeniably central to Defendant's business as "a wholesale distributor of various snack food products."

28. Plaintiffs and other IBOs are not engaged in independently established trades, occupations, professions, or businesses. Rather, IBOs overwhelmingly work exclusively for Defendant; the associated corporate entities are formed and exist for the sole purpose of working for Defendant.

29. Defendant charges its IBOs for products they are required to deliver at prices unilaterally set by Defendant.

30. IBOs lack control over the prices at which these products are then sold to Defendant's customers (e.g., large retail chains and grocery stores).

31. Each week, Defendant remits payment to IBOs for their services. The weekly pay is primarily comprised of the difference between the amount that IBOs were charged by Defendant to take the product from Defendant's warehouse for delivery, and the price ultimately paid by Defendant's customer to Defendant for the product. The difference between these two

values constitutes the IBO's weekly earnings and is often referred to as the IBO's "margin."

32. For example, if a bag of chips with a promised margin of 18% costs an IBO $1.00 when he receives the bag of chips from Defendant, then after delivering the product to the assigned retailer, the IBO should be paid eighteen cents when that bag of chips is sold.

33. Defendant creates the illusion that IBOs run businesses. However, since IBOs cannot control any of the prices, in reality they are simply paid wages/commissions for each product sold based on the margin rate (i.e., they are paid $0.18 for delivering a $1.00 bag of chip with an 18% margin that is sold).

34. IBOs' wages and earnings are directly determined by the margin rate promised by Defendant.

35. Defendant has induced IBOs to sign Distributor Agreements in significant part by communicating to IBOs that they receive a certain margin rate on Defendant's core products, which typically equals 18% or 19%. Additionally, Defendant communicated to IBOs that they would be eligible to earn margins as high as 21% for certain products.

36. These promised margin rates have been memorialized in email communications to IBOs at the time that they executed their Distributor Agreements.

37. The Distributor Agreements do not permit Defendant to change the margin rates promised to IBOs.

38. In approximately March 2018, Campbell's Soup Company, a publicly traded company, acquired Defendant in connection with the largest acquisition in Campbell's history.

39. In Campbell's 2018 Annual Report, Campbell's indicated that it assumed substantial debt to acquire Defendant and that it would engage in an aggressive multi-year cost cutting initiative.

40. Likely as part of these cost cutting measures and/or related corporate restructuring, in August 2019, IBOs nationwide received a nearly identical email from Defendant informing them that their margins would be cut effective September 2019.

41. Because of the margin cuts, Plaintiffs and IBOs across the country have suffered substantial loss in weekly earnings and have been deprived of their reasonable expectations regarding the benefits of the Distributor Agreements. Many IBOs nationwide are losing hundreds of dollars every week as a result of Defendant's unilateral margin cut.

42. Defendant's unilateral cut in the margin rates was undertaken in bad faith to deprive Plaintiffs and IBOs of the intended benefits of the Distributor Agreements in order to increase Defendant's revenue, and the margin cut was deceptively explained to IBOs as providing them with a benefit, in an effort to conceal the intended reduction in their pay.

43. A cut in a promised margin rate drastically undermines the benefit that IBOs allegedly receive by agreeing to work for Defendant.

44. On information and belief, part of Defendant's future cost cutting/revenue increasing efforts depend on placing severe economic pressure on its contracted IBOs to compel them to perform more work for less pay and/or terminate their agreements.

45. Plaintiffs also suffer significant damages each week due to deductions from their pay and expenses paid out of pocket that benefit Defendants, all of which are unlawful where Plaintiffs are employees of Defendants.

46. Each week, Defendant makes withholdings from the earnings of Plaintiffs and other IBOs. These withholdings are itemized on weekly "settlement sheets" and include, *inter alia*, withholdings for route loan repayments, truck loan repayments, truck rental payments, and electronic equipment.

6

47. Additionally, each week, Defendant diverts the earnings of Plaintiffs and other IBOs by requiring them to personally pay for work-related expenses such, *inter alia*, gas expenses, vehicle maintenance/repair expenses, and insurance expenses.

48. Plaintiff Vrabac estimates that during the time he has worked for Defendant, from approximately November 2012 to the present, Defendant has subjected him to wage deductions and work-related expenses far exceeding $75,000. Specifically, Defendant currently deducts approximately $167 in route fees from his compensation every week and $40 per week in "equipment fees." Moreover, Plaintiff is required to spend approximately $10,000 each year in gas expenses, vehicle maintenance/repair expenses, and insurance expenses.

49. Plaintiff Rocco estimates that during the time he has worked for Defendant, from approximately 1997 to the present, Defendant has subjected him to wage deductions and work-related expenses far exceeding $75,000. Specifically, Defendant currently deducts approximately $310 in route fees from his compensation every week and $40 per week in "equipment fees." Moreover, Plaintiff is required to spend approximately $10,000 each year in gas expenses, vehicle maintenance/repair expenses, and insurance expenses.

## NATIONWIDE CLASS ALLEGATIONS

50. Plaintiffs bring this action on behalf of themselves and other individuals who executed a Distributor Agreement and had their margins reduced in 2019.

51. Class action treatment of this action appropriate because all of Federal Rule of Civil Procedure 23's class action requisites are satisfied. In particular:

    (a) The class includes over 40 individuals, all of whom are readily ascertainable based on Defendant's records and are so numerous that joinder of all class members is impracticable.

    (b) Plaintiffs are class members, their claims are typical of the claims of other

7

class members, and they have no interests that are antagonistic to or in conflict with the interests of other class members.

(c) Plaintiffs and their lawyers will fairly and adequately represent the class members and their interests.

(d) Questions of law and fact are common to all class members, because, *inter alia,* this action concerns Defendants' identical or nearly identical breaches of contract and breach of the duty of good faith and fair dealing with respect to each class member. The nature of Defendant's discrete, across the board actions (i.e., whether these actions constitute breaches), will be determined through the application of generally applicable legal principles to common facts.

(e) Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## COUNT I

## BREACH OF CONTRACT

### (Nationwide Class Claim)

52. All previous paragraphs are incorporated as though fully set forth herein.

53. Plaintiffs and the class members have all signed nearly identical Distribution Agreements.

54. These agreements have been drafted by Defendant and must be construed against it.

55. Defendant has breached the agreements by unilaterally cutting the margins of IBOs nationwide, across all products at once in order to establish reduced rates, without authority

in the Distributor Agreement and in contravention of the plain language, contractual scheme, and Defendant's promises before and after execution of the Agreement.

## COUNT II

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Nationwide Class Claim)

56. All previous paragraphs are incorporated as though fully set forth herein.

57. Defendant has breached the implied duty of good faith and fair dealing by unilaterally cutting IBO margins nationwide in the bad faith manner described herein, depriving Plaintiffs of their reasonable expectations regarding the purported benefits of the Distributor Agreement.

## COUNT III

## UNJUST ENRICHMENT

### (Nationwide Class Claim)

58. All previous paragraphs are incorporated as though fully set forth herein.

59. As set forth above, Defendant promised to compensate Plaintiffs and other IBOs for their labor and services at margin rates substantially higher than the rate at which IBOs are actually being paid.

60. By failing to pay IBOs their promised margins and unilaterally cutting the margins of IBOs nationwide, across all products at one in order to establish reduced rates, Defendant has been unjustly enriched at the expense of Plaintiffs and the class members in violation of common law unjust enrichment and quantum merit doctrines.

## COUNT IV

## CONNECTICUT WAGE LAW VIOLATIONS

### (Individual Claims of Plaintiffs)

61.     All previous paragraphs are incorporated as though fully set forth herein.

62.     Plaintiffs Vrabac and Rocco are employees entitled to the protections of Connecticut's wage statutes.

63.     Defendant is an employer required to pay Plaintiffs in accordance with Connecticut law.

64.     At all relevant times, Defendant was an employer of Plaintiffs under Connecticut law.  However, Defendant has misclassified Plaintiffs and other IBOs as independent contractors.

65.     Defendant has required, without reimbursement, Plaintiffs to pay for insurance, fuel, vehicle maintenance, and various other costs necessary for them to perform their work within their scope of employment for Defendant's snack delivery business, all of which inured to the benefit of Defendant.

66.     As a result of Defendant's misclassification scheme, Plaintiffs were not paid all waged owned to them under C.G.S. § 31-71a et seq.

67.     Defendant has also unlawfully deducted hundreds of dollars from Plaintiffs' wages on a weekly basis for purported fees, insurance charges, route payment, and other work-related expenses.

68.     Defendant's practice of deducting various work-related expenses from Plaintiffs' wages also violates C.G.S. § 31-71e.

69.     Plaintiffs seek compensation resulting from Defendant's violation of C.G.S. § 31-71a et seq. pursuant to C.G.S. § 31-72.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff seeks the following relief on behalf of himself and other **nationwide** class members: (A) class certification; (B) general and consequential damages related to Defendant's breaches of contract and breaches of the duty of good faith and fair dealing and unjust enrichment; (C) restitution for all profits gained by Defendant at the expense of Plaintiff and other class members; (D) pre-judgment interest; and (E) any other relief the Court deems just and proper.

**WHEREFORE,** Plaintiffs seek the following relief on behalf of themselves: (A) payments equaling the value of all improper deductions; (B) reimbursement for all employment expenses borne on behalf of Defendant; (C) all available penalties/statutory damages available under Connecticut law; (D) pre-judgment interest and (E) any other relief the Court deems just and proper.

Dated: March 27, 2020

ARNES VRABAC, AND PAUL ROCCO,
on behalf of themselves and all
others similarly situated,

By their Attorneys,

*/s/ Zachary L. Rubin*
Zachary L. Rubin, (ct30192)
Harold L. Lichten, *pro hac vice anticipated*
Matthew W. Thomson, *pro hac vice anticipated*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
(617) 994-5800
zrubin@llrlaw.com
hlichten@llrlaw.com
mthomson@llrlaw.com